550 So.2d 294 (1989)
Jerlene ABBOTT, Plaintiff-Appellant,
v.
CLAIBORNE PARISH SCHOOL BOARD, Defendant-Appellee.
No. 20842-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1989.
Rehearing Denied October 26, 1989.
Writ Denied December 8, 1989.
*295 Culpepper, Teat & Avery by Bobby L. Culpepper, Jonesboro, for plaintiff-appellant.
John C. Blake, Dist. Atty., Jonesboro, and Lunn, Irion, Johnson, Salley & Carlisle by Brian D. Smith, Shreveport, for defendant-appellee.
Before FRED W. JONES, Jr., LINDSAY and HIGHTOWER, JJ.
LINDSAY, Judge.
The plaintiff, Jerlene Abbott, a teacher of remedial reading and math in the federally funded "Chapter I" program, filed suit against the Claiborne Parish School Board following the nonrenewal of her teaching contract for the 1986-87 school year. The plaintiff requested reinstatement to her position and damages of $115,000 because the defendant school board allegedly failed to comply with the Teacher Tenure Act, LSA-R.S. 17:441, et seq. She now appeals from a trial court judgment denying her claims. For the following reasons, we affirm.

FACTS
Beginning in 1977, the plaintiff was employed by the defendant school board as a Chapter I teacher. She taught remedial reading and math to slow learners in fifth and sixth grades.
In the spring of 1985, principals in the Claiborne Parish school system were informed of cuts in federal funds supporting the Chapter I remedial programs. At that time, the principals were given the option of implementing reductions in their Chapter I programs in the upcoming 1985-86 school year or waiting until the 1986-1987 school year. The plaintiff's principal initially chose to make his school's reduction immediately and informed the plaintiff that she would be dismissed. However, the principal reconsidered, and the plaintiff taught fifth and sixth grade in the Chapter I program in the 1985-86 school year.
In the spring of 1986, the plaintiff received a letter from W.J. Richardson, the superintendent of the defendant school board. The letter was dated May 14, 1986. The letter recited that due to decreases in Chapter I federal funding, the position she had formerly held was to be eliminated for the upcoming year. However, Mr. Richardson recommended that the plaintiff contact the principals of various schools within the parish to seek other employment. The plaintiff contacted numerous principals of *296 schools in Claiborne Parish and Webster Parish. However, none of the principals recommended her for employment. (In addition to the plaintiff, four other Chapter I teachers received letters to the same effect.)
On May 26, 1986, the plaintiff responded in writing to Mr. Richardson's letter by formally requesting employment for the 1986-87 school year. On July 29, 1986, the plaintiff met with Mr. Richardson, at which time he explained to her the procedure for dismissing probationary teachers. As none of the principals contacted by the plaintiff had recommended her for employment, Mr. Richardson did not offer her a teaching position. He asked the plaintiff if she wanted to voice her grievances at the school board meeting to be held in August. She initially declined, but she later wrote him, asking to be placed on the August agenda.
At the school board meeting, the plaintiff read a prepared statement complaining of her dismissal. Accompanying the plaintiff was a representative of the Louisiana Association of Educators (LAE). Mr. Richardson and School Board President W.F.M. Meadors, Jr., discussed the procedure for hiring and dismissing nontenured teachers. No member of the school board suggested that those procedures be changed.
Subsequently, on November 21, 1986, the plaintiff filed suit against the defendant school board, alleging that the defendant had failed to follow the proper procedure for removing a tenured teacher under L.S.A. R.S. 17:443. Nor had the school board applied its own "reduction in force" policy in her termination. The plaintiff further alleged that she had been discriminated against by the school board. In addition to seeking reinstatement to her former position, the plaintiff also sought damages in the following amounts: for damages to her name, reputation, honor and integrity, $50,000; attorney fees, $15,000; and emotional distress and humiliation, $50,000; or a total of $115,000 in damages.
The defendant school board answered the plaintiff's petition, denying that the tenure laws applied to plaintiff's employment situation.
On April 20, 1987, the defendant filed a motion for summary judgment. In support of this motion, the defendant filed the depositions of the plaintiff and Mr. Richardson, and the affidavit of Huey Fields, the director of the defendant's Chapter I education programs. The testimony of Mr. Richardson and Mr. Fields established that the plaintiff's salary was paid from a Chapter I federal grant. The only local funds that Mrs. Abbott received in her paychecks were personal improvement program support payments from 1982 to 1986. The plaintiff filed her own affidavit in opposition to the motion for summary judgment.
On May 6, 1987, the trial court issued a written opinion in which it granted partial summary judgment in favor of the defendant. It found that the plaintiff was not a tenured teacher within the contemplation of the Teacher Tenure Act, R.S. 17:441 et seq. The trial court found that the defendant had been employed in the federal funded Chapter I program for nine years and therefore the teacher tenure laws did not apply. However, the trial court found that the plaintiff had been treated as a probationary teacher, that the defendant had a "reduction in force" policy which applied to certain probationary teachers, and that those policies had not been applied to the petitioner. The court found that there was a material issue of fact as to whether these rules applied to the plaintiff. Thus, it denied the motion for summary judgment as it pertained to those claims. A judgment in conformity with this opinion was signed on June 14, 1987. (No appeal was taken from this judgment.)
Trial on the merits was held on the remaining issues on April 21, 1988. The plaintiff testified on her own behalf. She testified that as an employee of the defendant she had been teaching Chapter I remedial reading and math for nine years. She further testified that the defendant did not treat her differently from any other teacher, and that she had performed all of the duties required of her. She testified that, in keeping with Mr. Richardson's advice, *297 she had contacted numerous principals of various schools in Claiborne Parish and had been unable to secure further employment. She was currently working at the Homer Childhood Learning Center as a part-time teacher and at Presbyterian Village as a part-time nurse's aide. She testified that her dismissal by the defendant had caused her several problems, both financial and emotional. She stated that she was unaware that she had been hired on a year-to-year basis, even though she had received a letter each year saying her employment would continue for another year. She did concede that she had no assurances of automatic renewal. After the presentation of the plaintiff's testimony, she rested her case.
Testifying on behalf of the defense was Doris Lowe, business manager of the defendant school board. She testified that she handled the accounting and all payroll records. Her testimony established the plaintiff's past salary, as well as the salary she would have earned if her employment with the defendant had continued.
At the conclusion of Ms. Lowe's testimony, the defense likewise rested. The parties had stipulated to the admission of the depositions of the plaintiff, Mr. Richardson, and Mr. Meadows, a past president of the school board. Other exhibits admitted by the plaintiff were Mr. Richardson's letter to the plaintiff, informing her of her nonrenewal; a letter from Mr. Richardson to plaintiff's counsel, in which he stated that a reason for the plaintiff's nonrenewal was her poor classroom performance; and a copy of the defendant's "reduction in force" policy. Mr. Richard's deposition of December 22, 1986 was also admitted. (The jointly admitted deposition of Mr. Richardson was one taken on June 11, 1987.) The case was held open for the filing of various financial records of the plaintiff which had been subpoenaed by the defendant.
The trial court issued a written opinion on September 22, 1988. The trial court found that the plaintiff had been employed by the defendant in a federally funded program and that her contract had been renewed each year for nine years. However, she was timely notified of her nonrenewal and Mr. Richardson's actions in not renewing the contract were confirmed by the board at a subsequent meeting.
The trial court also ruled that the plaintiff was not a "probationary teacher" under the statutes. The court stated that if she had been a probationary teacher, she would have been elevated to the position of tenured teacher in three years in compliance with the statutes. To the contrary, the trial court found the plaintiff was in a separate category of teachers, i.e., teachers employed in federally funded programs with federal funds which were disbursed by the defendant pursuant to federal regulations. Thus, she was not entitled to the procedures required by Louisiana law for probationary teachers. The court rendered judgment in favor of the defendant and against the plaintiff. Costs were assessed against the plaintiff. Judgment in conformity with this opinion was signed on October 17, 1988.
The plaintiff appeals from this judgment. She asserts the following assignments of error: (1) The trial court erred in granting the partial summary judgment holding that plaintiff was not a tenured teacher; (2) the trial court erred in finding that the plaintiff was not a probationary teacher; and (3) the trial court erred in finding that the plaintiff was not entitled to the protection of the School Board's "reduction in force" policy.

TENURED TEACHER
The plaintiff argues that the trial court erred in finding that the plaintiff was not a tenured teacher and consequently was in error in granting the partial summary judgment.
The trial court rendered judgment granting the partial summary judgment on June 14, 1987. No appeal was taken from this judgment.
Trial on the remaining issues was held in April, 1988, and the resulting judgment was signed in October, 1988. That judgment was timely appealed.
*298 A partial summary judgment granting all or part of the relief for which the movant has prayed is a final appealable judgment. Morris v. Deluxe Check Printers, Inc., 395 So.2d 927 (La.App. 2d Cir. 1981). An appeal from a summary judgment must be taken within the time and in the manner specified for other final judgments. Barrois v. Service Drayage Company, 250 So.2d 135 (La.App. 4th Cir.1971), writ denied, 253 So.2d 66 (La.1971); Cleveland v. TheriotModec Enterprises, Inc., 469 So.2d 1215 (La.App. 1st Cir.1985), writ denied 475 So.2d 360 (La.1985). Plaintiff did not timely appeal the partial summary judgment which found that she was not a tenured teacher. LSA-C.C.P. Arts. 2087 and 2123; Barrois, supra. The partial summary judgment is final. Therefore, the issues decided by that judgment cannot be considered in this appeal.
However, assuming arguendo that the partial summary judgment was suspectible of review, we find the trial court was correct in holding that the plaintiff was not a tenured teacher under the Teacher Tenure Act, LSA-R.S. 17:441, et seq.
The courts have consistently held that under Louisiana law, a teacher or employee in a federally funded position cannot acquire tenure while holding such a position. Hayes v. Orleans Parish School Board, 256 La. 677, 237 So.2d 681 (La.1970); Thompson v. East Baton Rouge Parish School Board, 303 So.2d 855 (La.App. 1st Cir.1974); Burns v. State, Through Board of Elementary and Secondary Education, Department of Education, 529 So.2d 398 (La.App. 1st Cir.1988), writ denied 533 So.2d 374 (La.1988); Winston v. Orleans Parish School Board, 545 So.2d 1174 (La. App. 4th Cir.1989). These decisions were premised on the well-founded view that the state tenure laws were originally designed to protect "those [positions] in the regularly maintained school system ... (which were) sustained by recurring [state or local] revenues, over which they had a measure of control." Hayes, supra. The jurisprudence holds that the state has an interest in avoiding the heavy economic burden which would be placed upon the local school boards if employees were allowed to acquire tenure in federally funded programs. Such action would freeze the higher salaries of these programs into the state educational system, with no assurance that the system has adequate revenues to pay them. Winston, supra.[1]
In light of the prior jurisprudence, this assignment of error is without merit.

PROBATIONARY TEACHER
The defendant also argues that the trial court erred in finding that she was not a probationary teacher under the teacher tenure laws, and that she was therefore not entitled to the procedures provided for the dismissal of probationary teachers.
The defendant school board argues that this issue was resolved in its favor in the partial summary judgment. We disagree and determine that the issue is before this court for review.
The trial court held that the plaintiff could not be considered a probationary while serving as a Chapter I teacher. The court reasoned that if she was considered a probationary teacher under the Louisiana statutes, she would have acquired the status of a tenured teacher at the end of three years. The court found that plaintiff was not a probationary teacher, but was a teacher who fell into a unique category of teachers who were employed in federally funded programs. We agree.
LSA-R.S. 17:442 provides that "[e]ach teacher shall serve a probationary term of three years to be reckoned from the date of his first appointment in the parish or city in which the teacher is serving his probation." This statute further provides that such a probationary teacher automatically becomes a permanent teacher at the expiration of his three year probationary term.
*299 However, a teacher in a federally funded program is not entitled to tenured status. The whole concept of a "probationary" teacher appears to be geared toward the teacher's timely elevation to the position of a regular and permanent teacher. Such promotion comes automatically, barring discharge or dismissal, at the end of the statutorily dictated period of three years. Like the trial court, we do not believe the plaintiff can be a "probationary" teacher for an indefinite period of time.
We also note that, if a teacher in plaintiff's position were transferred from a federally funded program into an ordinary teaching position, that teacher would not automatically be entitled to tenured status because of her previous years of experience. To the contrary, we believe that the statute would require her to serve three years in the new position before attaining the status of a permanent, or tenured, teacher.
Inasmuch as the plaintiff is not a probationary teacher, the defendant school board was not required to follow the dismissal procedure set forth in LSA-R.S. 17:442.
Therefore, this assignment of error is without merit.

REDUCTION IN FORCE POLICY
In her final assignment of error, the plaintiff argues that the defendant improperly failed to apply its own "reduction in force" (RIF) policy. This policy, which was adopted in its present form by the school board on November 7, 1985, applies to situations wherein the school board reduces the number of school district employees for such causes as program elimination or declining enrollment. It requires consideration of all alternatives prior to personnel layoffs. After exhaustion of all alternatives, terminations may occur only after considering the individual employees in view of three factors: (1) certifications or qualifications; (2) seniority in the system; and (3) performance evaluation. The terminated employee is to be given written notice, informing him of his day of termination, the conditions requiring termination, and procedures for appeal. An employee who wishes to appeal must make a written request for a hearing within ten days.
The defendant school board argues that a nontenured and nonprobationary contract teacher like the plaintiff, whose job was based upon a federal grant and whose contract was renewed on a yearly basis, did not come under the RIF policy. We agree.
The RIF policy does not apply to a teacher in the plaintiff's unique position. The policy basically requires the school board to avoid dismissals of teachers, if possible, by absorbing them within the system. The plaintiff was neither a tenured nor a probationary teacher, but a contract teacher, employed on a year to year basis and paid with federal funds. Inclusion of such a "hybrid" employee was not contemplated under the policy. The defendant school board was not required to implement the RIF policy everytime a nontenured, nonprobationary employee's federally funded position was eliminated.
Further, the defendant's argument concerning LSA-R.S. 17:81.5 has merit. This statute, which was passed in 1987, provides as follows:
Not later than January 1, 1988, each city and parish school board shall develop and adopt rules and policies which it shall use in dismissing school employees who have not attained tenure in accordance with applicable provisions of law and whose dismissal is not a result of a reduction in force, as provided for in R.S. 17:81.4. The school board shall provide a procedure by which any employee, whose dismissal is governed by this Section, may participate in the development of the rules and policies. Such rules and policies shall be made available for public inspection within ten days after they are finally adopted.
While the statute is substantive, and thus cannot be given retroactive effect, it demonstrates the legislature's awareness that the dismissal of some untenured employees would not fall within the reduction in force policies. The plaintiff was such an employee.
*300 We find no error in the defendant's failure to apply the RIF policy in the present case. This assignment of error has no merit.

CONCLUSION
The judgment of the trial court is affirmed. Costs are assessed against the plaintiff-appellant.
AFFIRMED.

ON APPLICATION FOR REHEARING
Before FRED W. JONES, Jr., LINDSAY, HIGHTOWER, SEXTON and NORRIS, JJ.
Rehearing denied.
NOTES
[1] Apparently, the legislature has since codified this view in LSA-R.S. 17:446, which became effective on August 30, 1986, after the nonrenewal of the plaintiff's employment. This statute specifically provides that time spent in a federally funded position does not count toward permanent status.