STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 CA 0340

GLENN E. DIAZ

VERSUS

STATE OF LOUISIANA, THROUGH THE BOARD OF TRUSTEES OF
THE DISTRICT ATTORNEY'S RETIREMENT SYSTEM

Judgment Rendered: **NOV 15 2024**

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 650070

The Honorable Tiffany Foxworth-Roberts, Judge Presiding

Walter R. Woodruff, Jr.
Metairie, Louisiana

Counsel for Plaintiff/Appellant,
Glenn E. Diaz

Robert E. Tarcza
New Orleans, Louisiana

Counsel for Defendant/Appellee,
State of Louisiana, Through the Board of
Trustees of the District
Attorney's Retirement System

BEFORE: WOLFE, MILLER, AND GREENE, JJ.

GREENE, J. dissents with reasons.

**MILLER, J.**

Plaintiff/Appellant, Glenn E. Diaz, appeals a summary judgment dismissing his claims against Defendant/Appellee, State of Louisiana, through the Board of Trustees of the District Attorney's Retirement System ("DARS"). For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Mr. Diaz worked as an Assistant District Attorney ("ADA") in St. Bernard Parish for more than thirty years. During that time, Mr. Diaz contributed to and participated in DARS.[1] Mr. Diaz retired on November 11, 2014. More than sixteen months later, on March 22, 2016, Mr. Diaz submitted his application for retirement, and DARS made payments from that date.[2] Mr. Diaz requested that DARS pay him retirement benefits retroactive to November 11, 2014, but DARS indicated that it would only make payments from the date of Mr. Diaz's application.[3]

On July 22, 2016, Mr. Diaz filed a petition against the State of Louisiana, through the Board of Trustees of DARS ("the Board"). Mr. Diaz alleged DARS's decision to deny him vested retirement benefits based on its interpretation of La. R.S. 11:1631(D) was arbitrary and capricious. Mr. Diaz further alleged DARS illegally took property that belonged to him. He sought a judgment in his favor and

---

[1] DARS is a retirement system that provides retirement allowances and other benefits for district attorneys and their assistants in each parish. See La. R.S. 11:1582(A).

[2] Pursuant to DARS's recommendation, Mr. Diaz submitted a revised retirement application on April 11, 2016, wherein he selected "Back-DROP Benefit." Mr. Diaz then received a Back-DROP lump sum payment of $241,793.28 from DARS.

[3] We note that on November 6, 2014, Mr. Diaz sent a letter to the State of Louisiana, Employee's Administration, Office of Human Resources in the Division of Administration, notifying the State that he was going to retire from his position as an ADA on November 11, 2014. After Mr. Diaz retired, DARS did not make retirement payments as Mr. Diaz requested in his November 6th letter. However, DARS did notify Mr. Diaz that it had not received his application for retirement. On September 23, 2015, DARS again notified Mr. Diaz that it had not received his application for retirement. In response, Mr. Diaz indicated he sent a notice of retirement and requested DARS make monthly retirement payments along with retroactive payments. On September 25, 2015, DARS indicated it still had not received a completed and signed application for retirement and it had no authority to pay benefits for any time before receipt of a completed and signed application.

2

against DARS in the amount of $120,000.00, together with legal interest from November 11, 2014 until paid; attorney fees; a declaratory judgment declaring La. R.S. 11:1631, as applied by DARS, unconstitutional; and all other general and equitable relief.

DARS filed a motion for summary judgment on August 15, 2023, asserting that Mr. Diaz's first application for retirement was received by the Board on March 22, 2016 and that he was paid his retirement allowance retroactive to that date. DARS further alleged Mr. Diaz was not entitled to a retirement allowance before his application was received by the Board pursuant to La. R.S. 11:1631(D). In support of its motion, DARS filed the affidavit of the Director of DARS, Philip Qualls; Mr. Diaz's first application for retirement dated March 22, 2016; Mr. Diaz's revised application for retirement dated April 11, 2016; Mr. Diaz's DARS Benefit History; DARS's Summary of Principal Plan Provisions; a letter from DARS along with a copy of a check for Mr. Diaz's Back-DROP balance; and a Separation Notice dated November 18, 2014 along with emails between DARS and Mr. Diaz.

Thereafter, Mr. Diaz filed an opposition to DARS's motion. Mr. Diaz contended that DARS was not required to send him payments before the Board received his application for retirement on March 22, 2016, but he did not abandon, forfeit, surrender, waive, or otherwise give up the right to collect his retirement allowance from November 11, 2014 through March 21, 2016. In support of his opposition, Mr. Diaz filed a letter dated November 6, 2014 addressed to the Division of Administration; the petition; DARS's memorandum on its exception of no cause of action with attachments; Mr. Diaz's opposition to DARS's exception of no cause of action; and trial court minutes. DARS filed its reply on October 18, 2023.

A hearing was held on October 26, 2023, and the trial court granted summary judgment in favor of DARS and against Mr. Diaz, and dismissed Mr. Diaz's claims against DARS. A judgment to that effect was signed by the trial court on November 9, 2023. Mr. Diaz appealed.

## DISCUSSION

Summary judgment may be granted in the context of statutory interpretation when there are no material issues of fact in dispute and the sole issue before the court is a question of law as to the correct interpretation of the statute at issue.[4] Langsford v. Firefighters Retirement System, 2017-0719 (La. App. 1st Cir. 3/29/18), 247 So. 3d 728, 730. Such is the case here. Relevant hereto, Louisiana Revised Statutes 11:1631(D) provides:

> The retirement allowance shall begin as of the date specified by the member in his application for retirement or the date that the member's application for retirement is received by the board, whichever is later; however, in no event shall the allowance begin before the member's withdrawal from service.

On appeal, Mr. Diaz contends the trial court erred in granting summary judgment in favor of DARS. Mr. Diaz argues the trial court erred in its interpretation of La. R.S. 11:1631(D) and its finding that Mr. Diaz was not entitled to recover retirement benefits that he contends accrued between the date of his retirement and the date his application was received by the Board. Specifically, Mr. Diaz maintains that even though he submitted his retirement application over sixteen months after his retirement date, he did not forfeit the retirement benefit he argues vested during that time. Mr. Diaz further argues that DARS's interpretation of the statute is incorrect, would lead to absurd consequences by depriving him of his fully vested retirement benefit, and is unconstitutional.

The interpretation of any statutory provision starts with the language of the statute itself. Oubre v. Louisiana Citizens Fair Plan, 2011-0097 (La. 12/16/11), 79

---

[4] La. C.C.P. art. 966 was amended and reenacted by La. Acts 2023, No. 317, § 1 and La. Acts 2023, No. 368, § 1, effective August 1, 2023.

4

So. 3d 987, 997, cert denied, 567 U.S. 935, 113 S.Ct. 30, 183 L.Ed.2d 677 (2012). When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. La. C.C. art. 9; La. R.S. 1:4; Oubre, 79 So. 3d at 997. Unequivocal provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning. La. C.C. art. 11; La. R.S. 1:3. Laws on the same subject matter must be interpreted in reference to each other. La. C.C. art. 13.

Further, the meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting it. Langsford, 247 So. 3d at 732. The statute must therefore be applied and interpreted in a manner which is consistent with logic and the presumed fair purpose and intention of the legislature in passing it. Id. Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. Id.

Louisiana Revised Statutes 11:1631(D) provides for the date when a member's retirement allowance is to begin. "Retirement allowance" means the sum of the "annuity" and the "employers' annuity", or any optional benefit payable in lieu thereof. La. R.S. 11:1581(19).[5] The statute clearly and unambiguously provides that the retirement allowance is to begin as of the date specified by the member in his application for retirement or the date that the member's application for retirement is received by the Board, **whichever is later**. See La. R.S.

---

[5] "Annuity" means payments for life derived from the "accumulated contributions" of a member. All annuities shall be payable in equal monthly installments. La. R.S. 11:1581(3). "Employers' annuity" means payments for life derived from money provided by the employer or employing agency, or the parishes of Louisiana, or the state of Louisiana. La. R.S. 11:1581(12).

11:1631(D). In this case, applying the clear and unambiguous language of La. R.S. 11:1631(D), Mr. Diaz's retirement allowance was to begin on March 22, 2016, which is the date his retirement application was received by the Board. The consequence of the clear and unambiguous application of La. R.S. 11:1631(D) is that Mr. Diaz will not receive a retirement allowance for the time period between November 11, 2014 and March 21, 2016. We find that this consequence is not absurd or illogical, thus La. R.S. 11:1631(D) must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. Further, if retirees were allowed to file their application anytime and collect retroactive payments, La. R.S. 11:1631(D) would be unnecessary and superfluous.

While Mr. Diaz argues that this interpretation of La. R.S. 11:1631(D) is incorrect, would lead to absurd consequences, and is unconstitutional, many State Systems and Statewide Systems[6] under Title 11 of the Louisiana Revised Statutes require the submission of an application for payment to begin.[7] See La. R.S. 11:442, 761, 1141, 1306, 1453, 1529, and 1756. Further, some retirement systems provide for retroactive payments and some do not. For example, the Assessors' Retirement Fund, the Clerks' of Court Retirement and Relief Fund, and the Municipal Employees' Retirement System provide for retroactive payments if certain conditions are met. The Assessors' Retirement Fund and the Clerks' of

---

[6] The public retirement systems are classified as either a "state retirement system" or a "statewide retirement system." La. R.S. 11:4. The state retirement system includes Louisiana State Employees' Retirement System; Teachers' Retirement System of Louisiana; Louisiana School Employees' Retirement System; and Louisiana State Police Retirement System. La. R.S. 11:4(A)(1)(a)-(d). On the other hand, the statewide retirement system includes Assessors' Retirement Fund; Clerks' of Court Retirement and Relief Fund; DARS; Firefighters' Retirement System; Municipal Employees' Retirement System of Louisiana; Municipal Police Employees' Retirement System of Louisiana; Parochial Employees' Retirement System of Louisiana; Registrars of Voters Employees' Retirement System; and Sheriffs' Pension and Relief Fund. La. R.S. 11:4(B)(1)(a)-(i).

[7] Some retirement systems that require a retirement application include Louisiana State Employees' Retirement System, the Teachers' Retirement System of Louisiana, the Louisiana School Employees' Retirement System, the Louisiana State Police Pension and Retirement System, the Assessors' Retirement Fund, the Clerks' of Court Retirement and Relief Fund, and the Municipal Employees' Retirement System of Louisiana. See La. R.S. 11:442, 761, 1141, 1306, 1453, 1529, and 1756.

Court Retirement and Relief Fund allow for retroactive benefits if the application is received within ninety days of the date the applicant became eligible for the benefit. However, if the application is received by the board after ninety days of the date the applicant became eligible therefor, benefits are paid from the date the application is received by the board. See La. R.S. 11:1453(B) and 1529. Similarly, the Municipal Employees' Retirement System permits retroactive payments of benefits if a written application is received by the board sixty or fewer days after the date the applicant became eligible for the benefit. However, if an application is received by the board more than sixty days after the date the applicant attained eligibility, retroactive benefits are paid only for the sixty days prior to the date the application is received by the board. See La. R.S. 11:1756(D).

On the other hand, several retirement systems, including DARS, do not provide for the retroactive payment of benefits. For example, the Louisiana State Employees' Retirement System, the Teachers' Retirement System of Louisiana, and the Louisiana School Employees' Retirement System provide that retirement benefits become effective as of the date the application for retirement is filed with the retirement system as required by that system, or the day after the member terminates from the state service, whichever is later. See La. R.S. 11:442(A) and (B), 761(A)(5)(a), and 1141(A). These retirement application provisions are similar to those found in DARS.

After *de novo* review, we find La. R.S. 11:1631(D) is clear and unambiguous, its application does not lead to absurd consequences, and its language must be given effect. See La. C.C. art. 9; see also La. R.S. 1:4. The trial court correctly found that DARS did not owe Mr. Diaz retroactive payments for the period of time between his retirement and when his application for retirement was received by the Board under La. R.S. 11:1631(D). We find no support for Mr. Diaz's assertion that during the period of time between his retirement and his

7

application, benefits were accruing even though his allowance had not yet begun. Therefore, the trial court did not err in granting summary judgment in favor of DARS and against Mr. Diaz. This assignment of error is without merit.

## CONCLUSION

For the above and foregoing reasons, the November 9, 2023 judgment of the trial court is affirmed. All costs of this appeal are assessed against the Plaintiff/Appellant, Glenn E. Diaz.

**AFFIRMED.**

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

DOCKET NUMBER
2024 CA 0340

GLENN E. DIAZ

VERSUS

STATE OF LOUISIANA, THROUGH THE
BOARD OF TRUSTEES OF THE LOUISIANA
DISTRICT ATTORNEY'S RETIREMENT SYSTEM

**GREENE, J., dissenting.**

I respectfully dissent. Louisiana Revised Statutes 11:1631 fails to notify a retirement system member that any delay in submitting an application will cause the forfeiture of the benefits accruing from the date of retirement to the date of the receipt of the application for retirement benefits. Louisiana Revised Statutes 11:1631(C) uses the term "actual retirement benefit" when discussing what is owed and states that it "shall not exceed one hundred percent of his average final compensation." Subsection E also uses the term "benefit" to describe what will be suspended should the retired member be retained by any district attorney's office. Subsection F also uses the term "retirement benefit" to discuss what is suspended if the retirement system member is reemployed by any district attorney's office.

Mr. Diaz lost approximately $120,000 in benefits when DARS failed to pay him from the date of his retirement. DARS knew that Mr. Diaz had retired and that his employer, the St. Bernard Parish District Attorney's Office, was no longer making monthly contributions to DARS on his behalf. Nothing in La. R.S. 11:1631 prohibits DARS from setting aside (or escrowing) the maximum amount that may be due to Mr. Diaz from the date of his retirement until the receipt of his application for retirement. I find that DARS (or any other person or entity) should not benefit financially from Mr. Diaz's delayed application for retirement benefits. Notably, Louisiana Constitution Article 10, §29(E)(5)

provides that the accrued benefits of members of any state or statewide public retirement system shall not be diminished or impaired.

To have a result where a retired system member loses all rights to this benefit because of a delay in filling out an application is not only an unconstitutional diminishment of accrued benefits, but also immoral and just plain wrong. If subsequent to Mr. Diaz's retirement, he suffered some sudden medical trauma preventing him from executing an application and he had not executed a power of attorney before this unfortunate medical event, would DARS have the same attitude toward Mr. Diaz? Would DARS require Mr. Diaz to be interdicted to allow his curator to execute the application? I realize that in this case, that did not happen. It appears clear that Mr. Diaz was aware what DARS' position was, yet he held steadfast in his position. Stubborn? Possibly. Hardheaded? Maybe. However, after 16 months, he did succumb to the demands of DARS. I certainly don't condone failure to follow rules, but I do not think that Mr. Diaz's stubbornness should result in the drastic diminishment of his retirement benefits which also results in a windfall to DARS.